IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JOSE VEGA-CERVANTES (1),
GODELVO PINEDA-ALVAREZ (3),

Defendants.

CRIMINAL CASE NO.

1:14-CR-00234-WSD-JFK

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Pending before the court are Defendant Jose Vega-Cervantes' ("Cervantes")

motion [Doc. 36] to suppress statements made on May 29, 2014, and motion [Doc. 37]

to suppress physical evidence, that is, the warrantless seizure of a Blackberry model

Curve cellular telephone, of the controlled substance from a 1982 Chevrolet

Scottsdale truck ("1982 Chevy truck") and of unidentified items from a Chevrolet

Equinox ("Equinox") also on May 29, 2014.  Defendant Cevantes initially contended

that the government agents lacked probable cause for his warrantless arrest on May

29, 2014, and that any items seized as a result of that arrest should be suppressed.

[Doc. 37].  Also pending before the court is Defendant Godelvo Pineda-Alvarez's

("Alvarez") motion [Doc. 35] to suppress evidence, including a Blackberry model

Curve cellular telephone and a BLU model Studio 5.5S cellular telephone, seized on May 29, 2014, resulting from his warrantless arrest; he contends that government agents did not have probable cause for his arrest.  And before the court are Defendant Alvarez's motion [Doc. 55] to suppress a statement he made, after invoking his <u>Miranda</u> rights, on May 29, 2014, in response to a request for him to provide the password for the BLU model Studio 5.5S cellular telephone, and motion [Doc. 60] to suppress evidence seized from the 1982 Chevy truck, the controlled substance, and from the Equinox, not specified, on May 29, 2014.  Defendant Alvarez also filed a motion [Doc. 57] to suppress evidence obtained from the execution of federal search warrants for previously described cellular telephones.

Prior to the evidentiary hearing, in a pre-suppression hearing brief, the Government placed Defendants on notice that it contends that neither Defendant had a legitimate expectation of privacy in the 1982 Chevy truck on May 29, 2014 [Doc. 59 at 3] and advised that it will not introduce at trial any evidence derived from use of the password for BLU model Studio 5.5S cellular telephone provided by Defendant Alvarez [<u>Id.</u> at 4].  Defendant's motion [Doc. 55] is moot.  The Government did not contend that either Defendant lacked a legitimate expectation of privacy in the cellular telephones seized on May 29, 2014.  [Doc. 59].

2

An evidentiary hearing,[1] taking place over several days, October 27, 2014 [Doc. 71], November 25, 2014 [Doc. 73] and January 8, 2015 [Doc. 80], was held on the motions to suppress evidence and statements [Docs. 35, 36, 37, 55 and 60].[2]  At the beginning of the evidentiary hearing, the Government stated that no evidence was seized from the Equinox.  (Tr. at 4).  And the Government confirmed that no evidence flowing from the use of the password for the BLU model Studio 5.5S cellular telephone would be introduced into evidence.  (Id. at 5).  The Government further reiterated that Defendants lacked a reasonable expectation of privacy in the 1982 Chevy truck and, again, did not place Defendants on notice of any challenge to their right to contest the seizure and search of the cellular telephones.  (Tr. at 3-7).

In his post-hearing brief, Defendant Alvarez only argues that the government lacked probable cause to support his warrantless arrest and that, therefore, any fruits obtained as a result of that arrest, such as the two cellular telephones and the contents

---

[1]Citations to the transcripts for the first two days of the hearing are sequentially numbered and cited as: (Tr. at ).  Citations to the transcript for final day of the hearing are (Tr. 1/8/15 at ).

[2]The motion to suppress evidence resulting from the execution of the federal search warrant for the contents of the Blackberry model Curve cellular telephone associated with Defendant Alvarez was briefed but not the subject of the evidentiary hearing.

3

of those cellular telephones, should be suppressed.  [Doc. 82].  Defendant apparently abandoned his challenge to the seizure and search of the 1982 Chevy truck because he made no argument to attempt to establish a legitimate expectation of privacy in the truck or to challenge the seizure and search of the truck.  [Id.].  In his post-hearing brief, Defendant Cervantes continues to challenge the seizure and search of the 1982 Chevy truck but no longer contends that the government lacked probable cause for his warrantless arrest on May 29, 2014.  Defendant only challenges the seizure of the Blackberry model Curve cellular telephone attributed to him on the basis that the Government's evidence failed to establish that an exception to the warrant requirement supported the seizure.  [Doc. 83 at 6-7].  Defendant also did not present any argument in support of his motion [Doc. 36] to suppress his post-arrest statements, and that motion is abandoned.[3]  See United States v. Zekic, 2010 WL 4962985, at *1 (N.D. Ga. October 28, 2010) (citing Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed

---

[3]And, as argued by the Government [Doc. 87 at 6-7, 9-12], the court finds that Defendant Cervantes knowingly, voluntarily and intelligently waived his Miranda rights on May 29, 2014, and that his statement is admissible.

4

abandoned and its merits will not be addressed.")), adopted by 2010 WL 4967825 (N.D. Ga. December 1, 2010).[4]

As noted, Defendant Alvarez did not present any arguments in his post-hearing brief regarding the seizure and search of the 1982 Chevy truck.  [Doc. 82].  However, after the Government filed its post-hearing brief in opposition to Defendants' motions to suppress, Defendant filed an untimely motion to adopt the arguments of Defendant Cervantes with respect to the 1982 Chevy truck and adding the argument that no exception to the warrant requirement supported the seizure of the BLU model Studio 5.5S and the Blackberry model Curve cellular telephones attributed to him.  [Doc. 89]. In response, although still contending that Defendant lacks a reasonable expectation of privacy in the truck, the Government does not oppose Defendant's adopting the arguments regarding the seizure of the 1982 Chevy truck.  However, arguing that Defendant has not even attempted to establish a reasonable expectation of privacy in

_____

[4]Accord United States v. Elder, 2010 WL 5656687, at *3 (N.D. Ga. December 16, 2010) (citing United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1327 n.3 (N.D. Ga. 2009) ("Defendant has not perfected the motion [to suppress], and it is deemed abandoned and withdrawn. United States v. Shorr, No. 1:07-cr-182, 2008 WL 655994, [at] *1 (N.D. Ga. Mar[ch] 10, 2008) (Thrash, J., adopting Vineyard, M.J.) (deeming preliminary motion to suppress abandoned because the defendant failed to perfect the motion).") (internal quotation marks omitted)), adopted by 2011 WL 294507 (N.D. Ga. January 27, 2011).

5

the cellular telephones attributed to him, the Government opposes Defendant's motion to adopt the arguments challenging seizure of the telephones.  [Doc. 91].  The court **GRANTS** the motion [Doc. 89] to adopt as will be addressed *infra*.

### Motions to Suppress Evidence: Defendants' Arrests and the Seizures on May 29, 2014

Defendant Cervantes contends that the Government failed to establish that his Blackberry model Curve cellular telephone was seized on May 29, 2014, pursuant to an exception to the warrant requirement and that the Government failed to establish that the warrantless seizure and search of the 1982 Chevy truck was lawful and fell within the automobile exception to the warrant requirement.  [Doc. 83].   And Defendant Alvarez contends that the Government failed to establish probable cause to support his arrest on May 29, 2014, that the seizure of any evidence resulting from his arrest, including his BLU model Studio 5.5S and Blackberry model Curve cellular telephones, are fruits of that unlawful arrest, that the Government failed to establish that his cellular telephones were seized on May 29, 2014, pursuant to an exception to the warrant requirement and that the Government failed to establish that the warrantless seizure and search of the 1982 Chevy truck was lawful and fell within the automobile exception to the warrant requirement.  [Docs. 82 and 89].   Both

6

Defendants contend that they have a legitimate expectation of privacy in the 1982 Chevrolet truck.  [Docs. 83 and 89].

## I.   Background Facts Relevant to Issues Remaining before the Court

On May 28, 2014, law enforcement officers in Mississippi stopped a 1982 Chevy truck being driven by Brenda Pamela Guerrero; the truck was registered to Guerrero. (Tr. at 9-10, 30, 203).  After Guerrero gave consent to search the truck, law enforcement officers found approximately fifteen gallons of liquid methamphetamine in the right (passenger side) fuel tank.  (Tr. at 9-10, 47-49, 203-05).  Guerrero agreed to make a controlled delivery of the liquid methamphetamine.[5]  (Tr. at 10, 205).  The truck was, according to agents, not very road worthy and was loaded on to a flatbed truck for transport to Atlanta, the ultimate destination for the delivery.  (Tr. at 10, 13, 30, 204-05).

---

[5]A controlled delivery allows law enforcement officers the ability to control "the overall movement and flow of everything that transpires."  (Tr. at 11).  Law enforcement officers took possession of the 1982 Chevy truck in Mississippi and retained possession of the truck from that point on, such that the truck was always within eye sight of agents who were present during the controlled delivery and subsequent events.  (Tr. at 239-40).

AO 72A
(Rev.8/82)

Guerrero advised law enforcement that she had talked over the telephone to and had exchanged texts with "Flaco" whom she had not met; the individual to whom she was to deliver the liquid methamphetamine. She was also talking to and texting with "Carlos in Mexico" and "the man from TJ" (Tijuana) about the delivery. (Tr. at 11-13, 205-06). Guerrero communicated with these three individuals regarding her location, the mechanical problems with the truck and the delivery location. She was instructed to go to a Travelodge Motel located at 6025 Old Dixie Road in the Atlanta, Georgia, area. (Tr. at 11-12, 51, 206). Agents and Task Force Officers ("TFO") with the Department of Homeland Security met the Mississippi officers and Guerrero at the Alabama-Georgia state line and assumed control of 1982 Chevy truck and over the delivery of the controlled substance. After arriving in Atlanta, all of the agents and TFOs participating in the controlled delivery, along with Guerrero and the truck, first met at a staging area near the Travelodge. (Tr. at 13, 40, 203, 206-07). The 1982 Chevy truck was then driven from that location by Guerrero to the Travelodge under the surveillance of law enforcement agents and officers. (Tr. at 13, 40-41, 207).

Guerrero parked the truck at the Travelodge and waited. She contacted Flaco and "Mexico" (understood to be Carlos) and advised that she had arrived at the motel. (Tr. at 207-08). Flaco, during a telephone conversation, asked Guerrero to relocate

8

and to follow them to another location.  The agents advised Guerrero to refuse, and she spoke with Carlos and stated that she did not want to move and that she just wanted her money and to get a motel room to rest and then get home.[6]  (Tr. at 209). Shortly thereafter, the Equinox arrived with Defendant Cervantes, identified as Flaco, driving and Defendant Alvarez, a passenger.  (Tr. at 13-14, 56, 70, 213).  The Equinox parked several spaces away from Guerrero and, after a few minutes, left the motel parking lot.  The Equinox drove to a restaurant and, after a short time, to an apartment complex before returning in about twenty minutes to the Travelodge to park next to Guerrero.  (Tr. at 14, 56-59, 211-13).  Agents and officers on surveillance believed, based on their training and experience, that Defendants were conducting a "heat check," that is, looking for any suspicious vehicles or individuals that might be law enforcement before taking delivery of the truck.  (Tr. at 15, 216).  During this time, Guerrero contacted Carlos to advise that she thought Flaco had arrived but then left, and she asked him to have Flaco return due to the problems with the 1982 Chevy

---

[6]Guerrero was expecting to be paid $1,000 upon delivery of the liquid methamphetamine.  (Tr. at 209).

9

truck.  Both Defendants were also observed using cellular telephones during this time.[7]  (Tr. at 14, 23-24, 58, 211-12).

After returning to the motel, Defendants exited the Equinox and walked over to Guerrero and the 1982 Chevy truck to make contact with her.  (Tr. at 14, 59, 212, 268).  One of the Defendants, later determined to be Defendant Cervantes, instructed Guerrero to place the truck keys on the floor board of the truck.  Guerrero was then paid the $1,000 and left to get a motel room.[8]  (Tr. at 14, 41, 271).  Defendant Cervantes then entered the 1982 Chevy truck and appeared to attempt to start the truck.  The truck did not crank.  The Defendants reentered the Equinox and drove across the street to a gas station.  After few minutes, they returned to the motel parking lot.  (Tr. at 14, 41-42, 213, 215-16, 268, 272-73).  In about five minutes, a tow truck arrived; both Defendants pushed the 1982 Chevy truck out of the parking space to assist in loading it on the tow truck.  The tow left with Defendants following in the

_____

[7]Based on the conversations Guerrero had with Flaco and Carlos, the agents believed that, in order to coordinate the delivery, Flaco was also speaking directly to Carlos.  (Tr. at 24-25).

[8]The agents and officers initially believed, because Defendant Cervantes was Flaco, that he had paid Guerrero the $1,000.  (Tr. at 70, 214, 243-44).  However, some time later, after both Defendants were arrested that day, Guerrero identified a photograph of Defendant Alvarez as the individual who paid her.  (Tr. at 79-80, 214, 244, 270).

Equinox.  Surveillance agents were also following, not knowing where the truck was headed.  (Tr. at 15-16, 60, 76, 215-17, 273, 285-87).

The 1982 Chevy truck was taken to One Stop Auto Care ("auto shop") located on Tanglewood Road in Jonesboro, Georgia.  (Tr. at 16, 217-18, 274).  At the auto shop, Defendants parked the Equinox in front, exited and entered the auto shop, and the tow truck was subsequently directed around to the back of the auto shop.[9]  (Tr. at 17-18, 218).  After the 1982 Chevy truck was started and driven around to the front of the auto shop, it was driven into the far-left (viewing from the front) shop bay and raised on a lift to allow examination underneath the truck.[10]  (Tr. at 18-20; 145, 220). The surveillance agents and officers observed three individuals underneath the 1982

---

[9]Apparently unknown to the agents at the time, a person named Chulo, a customer of the auto shop, contacted one of the mechanics, Alejandro Cardoco, and advised that a truck was being delivered to the shop for servicing for a leak.  (Tr. at 155, 158, 171-73).  The tow truck with the 1982 Chevy truck arrived, and Defendants, in the Equinox, arrived at the same time.  When asked, Defendant Alvarez stated that the 1982 Chevy truck would not crank, and Cardoco directed the tow truck to the back of the shop.  (Tr. at 156, 159-60, 173, 177, 188).  Defendant Cervantes then assisted with getting the 1982 Chevy truck off the tow truck, and Cardoco obtained some starter fluid and a jump box and was able to crank the truck and drive it around to the front of the shop.  (Tr. at 157, 177-78).

[10]The auto shop was open for business with a number of vehicles parked out front and several individuals in the business.  (Tr. at 222, 289-90).

Chevy truck examining the area of the right (passenger side) fuel tank.[11] (Tr. at 20-21, 223, 290, 312-13).  Due to concerns about maintaining control over the liquid methamphetamine, the agents and officers decided to enter and secure the 1982 Chevy truck and the individuals in the auto shop.  (Tr. at 21-22, 29, 223, 290-91, 312-13).

A number of agents and officers entered the open bay doors in the front of the shop, and several agents and officers drove around towards the back of the shop.  (Tr. at 94-96, 223-24, 249, 291-92).  Homeland Security Special Agent Martin Kautz and TFO Brain Hoopingarner, who entered the front of the auto shop, observed a number of individuals inside and also saw a few individuals run towards the back of the auto shop.  (Tr. at 97, 293-94, 300, 315-17).  Agent Kautz identified one of the individuals appearing to go out the back of the shop as Defendant Alvarez and stated that TFO Hoopingarner apprehended Defendant at the back of the shop.  (Tr. at 294, 300, 316-17).  TFO Todd Bailey, one of the officers who drove towards the back of the auto shop, exited his vehicle and heard other agents yelling that people had run out of the back of the shop.  He observed agents and officers running towards the wood line.

_____

[11]Cardoco testified that, besides himself, examining the truck were Chulo and Junior, one of the two men who arrived with Chulo.  Cardoco explained what needed to be done to repair the leak, and Chulo instructed him to do the servicing.  (Tr. at 157, 160-62, 173, 176, 178, 191-92).

(Tr. at 223-24, 249).  One individual was being detained on the other side of a fence, and an agent advised that another person was hiding.  TFO Bailey began searching the bushes and cars behind the auto shop.  (Tr. at 224-25).  He saw a man lying face down partially under a car; the TFO could not see the man's arms from his elbows to the fingers.  He began instructing the man, first in English and then in Spanish, "hands up" without any response.  (Tr. at 225-26).  With the assistance of another agent, the TFO was able to finally handcuff the man, Defendant Cervantes - whom TFO Bailey recognized as Flaco, the driver of the Equinox.  (Tr. at 226-27).  Defendant Cervantes was then escorted back inside the auto shop.  (Tr. at 228).

All of the individuals detained at the auto shop were initially patted down for weapons; however, if an item detected on the person was not believed to be a firearm, the item was not seized at that time.  (Tr. at 302).  Approximately a hour after taking Defendant Cervantes into custody, he was interviewed by TFOs Bailey and Hoopingarner, assisted by TFO Eric Arroyo, who interpreted.  (Tr. at 85-92, 117-18, 229-35).  During the interview, TFO Bailey asked Defendant Cervantes, who had waived his Miranda rights, if he had a cellular telephone.  Defendant, who remained handcuffed, nodded towards the area where he had been seated after being detained.  (Tr. at 234, 282).  Defendant walked in that direction with TFO Arroyo out of TFO

13

Bailey's sight and returned with a cellular telephone. (Tr. at 234-35, 282). Defendant advised that the cellular telephone was his and, when asked, attempted to make a telephone call to a number in Mexico and to Guerrero. (Tr. at 117, 235, 282). The TFOs then attempted to speak with Defendant Alvarez, who invoked his <u>Miranda</u> rights. A number of agents and TFOs present believed that a Blackberry model Curve cellular telephone and a BLU model Studio 5.5S cellular telephone were seized from Defendant Alvarez's person but no one was able to identify who seized the cellular telephones.[12]  (Tr. at 25-26, 64-65, 236-37, 276-77).   TFO Bailey first recalled observing the cellular telephones when he was speaking to Defendant and asked Defendant if the cellular telephones belonged to him. Defendant responded, yes. (Tr. at 236-37, 276-77). Homeland Security Special Agent Yates, the case agent, testified, when being cross-examined about the seizure of the cellular telephones, "I know of nothing that came out of the Equinox." (Tr. at 9, 64-65).

_____

[12]TFO Hoopingarner testified, "I knew, having been there, that he had phones on him." (Tr. at 117). However, when the TFO stated that he did not personally seize the cellular telephones, the court struck that testimony. (Tr. at 117-18). Although the court will not consider the testimony in resolving the pending motions to suppress, the statement is probably relevant to the question of how the cellular telephones came into the Government's possession.

14

Additional facts will be set forth as necessary during discussion of the motions to suppress.

## II.   Discussion

### a.   Seizure of 1982 Chevy Truck

Both Defendants contend that the warrantless seizure of the 1982 Chevy truck was unlawful because the seizure does not fall within the scope of the automobile exception to the warrant requirement.  [Doc. 83 at 5-6; Doc. 89].  Prior to discussion of whether the automobile exception applies, Defendants must each establish that they have a legitimate expectation of privacy in the truck.  Defendant Cervantes contends that he has made that showing having "borrowed" the truck from Guerrero, the registered owner, with her consent.  [Doc. 83 at 3-4].  And Defendant Alvarez contends that he has made this showing as evidenced by the fact he made the $1,000 payment to Guerrero.  [Doc. 89].  The court finds that neither Defendant has established a legitimate expectation of privacy in the 1982 Chevy truck.

To determine whether an individual may challenge a search, the court must decide "whether the individual maintains a legitimate expectation of privacy in the object of the search."  United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989).  It is each Defendant's burden to prove that he has a legitimate expectation of

15

privacy in the object of the search, that is, the 1982 Chevy truck on May 29, 2014.
See United States v. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000).  Making this
determination involves a two-part inquiry:  (1) "whether the individual has manifested
'a subjective expectation of privacy in the object of the challenged search[,]' . . . [and
(2)] whether society is willing to recognize the individual's expectation of privacy as
legitimate."  Hastamorir, 881 F.2d at 1559 (citation omitted).  In this regard, "[t]he
Supreme Court has held that '[a] person who is aggrieved by an illegal search and
seizure only through the introduction of damaging evidence secured by a search of a
third person's premises or property has not had any of his Fourth Amendment rights
infringed.'"  United States v. Brown, 743 F.2d 1505, 1506 (11th Cir. 1984) (quoting
Rakas v. Illinois, 99 S. Ct. 421, 425 (1978)).  Thus, "'in order to claim the protection
of the Fourth Amendment, a defendant must demonstrate that he personally has an
expectation of privacy in the place searched, and that his expectation is reasonable.
. . .'"  United States v. Chaves, 169 F.3d 687, 690 (11th Cir. 1999) (citation omitted).
In other words, "Fourth Amendment rights are personal and may not be vicariously
asserted."  Lenz v. Winburn, 51 F.3d 1540, 1549 (11th Cir. 1995).

Additionally, it is well established that there is a reduced expectation of privacy
in a vehicle due to the extensive regulation of automobiles.  See United States v.

16

Watts, 329 F.3d 1282, 1285 (11th Cir. 2003); United States v. Parrado, 911 F.2d 1567,

1571 (11th Cir. 1990).  Second, "[t]raditional or common law theories of property

rights do not automatically confer standing to challenge a search."  United States v.

Dyar, 574 F.2d 1385, 1390 (5th Cir. 1978).[13]  "Property rights in absence of reasonable

expectations of privacy in property cannot support a Fourth Amendment claim[.]"  Id.;

see also United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987) (noting that

no single factor is determinative and that the determination of whether a legitimate

expectation of privacy exists depends on the totality of the circumstances, the court

stated that the mere presence of ownership or financial interest in the object of the

search is not sufficient to create a legitimate expectation of privacy).

Defendant Cervantes' assertion that he "borrowed" the vehicle from Guerrero

and Defendant Alvarez's contention that he paid Guerrero for the delivery of the truck

are simply insufficient to establish a legitimate expectation of privacy given the

totality of the circumstances in this case.  To begin with, as testified at the hearing, the

Government acquired possession of the 1982 Chevy truck in Mississippi and

maintained custody and control over the vehicle from that point forward.  (Tr. at 10-

---

[13]Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

17

11, 239-40).  The truck had already been searched with Guerrero's, the registered owner, consent; and the illegal contents of the truck, fifteen gallons of liquid methamphetamine, had been discovered.  (Tr. at 9-11, 47-49, 203-05).  Even after Guerrero turned the truck over to Defendants, the Government maintained surveillance and control over the vehicle.  (Tr. at 13-14, 16, 18-21, 208, 211-15, 217-24).  Under these circumstances, Defendants cannot establish an objectively reasonable expectation of privacy, that is, one that society is willing to accept, in the truck.  See Hastamorir, 881 F.2d at 1559.  And any claim to ownership of the contents of the truck, such as the liquid methamphetamine - which is really what Defendant Alvarez was paying the $1,000 to Guerrero for delivering, not an old, malfunctioning pick-up truck - does not support a finding of a legitimate expectation of privacy.  See Chaves, 169 F.3d 690 (a claim that an individual has an interest in the items seized during a search, however, is insufficient to establish his Fourth Amendment rights were implicated by a search); United States v. Huerta, 2009 WL 5065694, at **1-2 (E.D. Tenn. December 16, 2009) (finding that the defendant's use of the trailer as a storage bin for his marijuana "did not give him a reasonable expectation of privacy," the court noted that "[s]ociety is not prepared to accept as legitimate an expectation

18

of privacy that is based solely upon the storage of illegal contraband," given a lack of ownership interest in the property).

And the evidence refutes any contention by Defendants that they maintained possession and control over the 1982 Chevy truck.  As Alejandro Cardoco, the mechanic at the auto shop testified, a person named Chulo, a customer of the auto shop, contacted him and advised that a truck was being delivered to the shop for servicing for a leak.  (Tr. at 155, 158, 171-73).  The tow truck with the 1982 Chevy truck arrived, and Defendants, in the Equinox, arrived at the same time.  Although Defendant Alvarez stated that the 1982 Chevy truck would not crank and Defendant Cervantes assisted with getting the 1982 Chevy truck off the tow truck (Tr. at 156, 158-60, 188-89), neither Defendant had any further association with the truck.  In fact, both Defendants attempted to disassociate themselves from the truck when they apparently fled the auto shop - or tried to do so - when law enforcement entered.  (Tr. at 97, 224-27, 293-94, 300-01, 315-16).  The individual identified as Chulo asserted control over the truck as further evidenced by the facts he had made arrangements for the servicing and, after arriving at the auto shop, examined the truck with the mechanic, issuing the instructions to repair the truck (Tr. at 157, 160-62, 173, 176, 178, 191-92).  Defendants did not establish a subjective expectation of privacy in the

19

truck.  See United States v. Glasgow, 658 F.2d 1036, 1044-45 (5th Cir. Unit B 1981) (finding that a defendant who had previously driven the vehicle searched, but who was not in possession of the vehicle when searched and who had no ownership interest in vehicle, did not show "that he had property rights, either by lawful possession or by control with the right to exclude, which would indicate that he had a legitimate expectation of privacy" in the vehicle); United States v. Viezca, 555 F. Supp. 2d 1254, 1260-61 (M.D. Ala. 2008) (finding that "presence in the vehicle alone is not sufficient to establish standing" given fact that the defendant did not "have any ownership or other possessory interest in the vehicle"); United States v. Hebron, 243 F. Supp. 2d 90, 96-97 (D. Del. 2003) ("With regard to an expectation of privacy in a motor vehicle, outright ownership is not required, but there must be 'clear evidence of continuing possession and control, as well as no evidence that the driver obtained the car illegitimately.'") (quoting United States v. Baker, 221 F.3d 438, 443 (3rd Cir. 2000)).[14]

And, even if Defendants could establish a legitimate expectation of privacy in the 1982 Chevy truck, the warrantless seizure at the auto shop on May 29, 2014, falls

_____

[14]A good argument could be made that Defendants did not obtain the truck legitimately as they and the truck were involved in a controlled delivery of contraband - the liquid methamphetamine.

within the automobile exception to the warrant requirement.  Defendants contend that the exception does not apply because the truck was in disrepair such that it was not mobile.  [Doc. 83 at 5].  The Government argues that the truck's maintenance issues do not undermine its inherent mobility.  [Doc. 87 at 17].  The court agrees.

Although as a general rule, the Fourth Amendment requires police officers to obtain a warrant before conducting a search, see California v. Carney, 105 S. Ct. 2066, 2069 (1985), in Carroll v. United States, 45 S. Ct. 280, 285 (1925), the Supreme Court established an exception to the warrant requirement for searches of automobiles and other moving vehicles.  Under the "automobile exception," "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."  Pennsylvania v. Labron, 116 S. Ct. 2485, 2487 (1996); see also United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006) (indicating that "readily mobile" means "operational").  No separate exigent circumstances need to be shown.  See Maryland v. Dyson, 119 S. Ct. 2013, 2014 (1999); Watts, 329 F.3d at 1286 ("[T]his Court made it 'clear that the requirement of exigent circumstances is satisfied by the ready mobility *inherent* in all automobiles that reasonably appear to be capable of functioning.'") (quoting United States v. Nixon, 918 F.2d 895, 903 (11th Cir. 1990)) (emphasis in original).

Defendants do not contest that the agents had probable cause to search the truck. [Doc. 83 at 5-6]. And the evidence establishes that law enforcement had probable cause to believe that the truck contained a quantity of liquid methamphetamine based on the stop and consent search in Mississippi. (Tr. at 9-10, 47-49, 203-04). Instead, as noted, Defendants assert that due to the mechanical problems with truck, that is, being towed from Mississippi to Atlanta, failing to crank at the motel and being towed to the auto shop, having to be jumped off at the auto shop and being on the lift for repairs, establishes the lack of mobility. [Id.]. However, Defendants take a much too narrow view of the automobile exception to the warrant requirement with respect to the inherent mobility of automobiles.

In Michigan v. Thomas, 102 S. Ct. 3079 (1982), the Supreme Court stated, "It is . . . clear that the justification to conduct . . . a warrantless [automobile] search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." Id. at 3080-81. No balancing of circumstances concerning mobility is typically required because a search is justified in part based on the lesser expectation of privacy individuals have in their vehicles.

22

See, e.g., United States v. Fields, 456 F.3d 519, 524 (5th Cir. 2006) ("Even where an automobile is not immediately mobile at the time of the search, 'the lesser expectation of privacy resulting from *its use as a readily mobile vehicle* justifie[s] application of the vehicular exception.'") (citation omitted; emphasis in original); United States v. Mercado, 307 F.3d 1226, 1228 (10th Cir. 2002) ("The rationale for the automobile exception is based on both the inherent mobility of cars . . . and the fact that there is a reduced expectation of privacy with motor vehicles."); Parrado, 911 F.2d at 1571 ("A warrantless search of a vehicle is in part justified because persons have a reduced expectation of privacy in their vehicles.").

The evidence in this case establishes that the 1982 Chevy truck remained inherently mobile, although in the need of repair and about to be repaired, at the time of seizure on May 29, 2014.  The truck had been driven just a short while before by Guerrero from the staging location to the Travelodge.  (Tr. at 11, 13, 40-41, 206-07, 266).  And the mechanic, just prior to seizure, drove the truck from the rear of the auto shop around to the front and into the service bay.  (Tr. at 18, 157, 177, 220).  The fact that the truck needed to be jumped off to crank or was in the need of servicing does not detract from its inherent mobility.  In Mercado, the court considered whether the automobile exception applied to a vehicle that was having mechanical problems, was

23

located at a repair shop and was going to be serviced with the understanding it would be repaired by morning.  307 F.3d at 1229.  The court stated "that mere temporary immobility due to a readily repairable problem while at an open public repair shop does not remove the vehicle from the category of 'readily mobile.'"  Id.  Similar facts are before this court and result in the same conclusion.  The auto shop was open for business with a number of individuals in the shop.  (Tr. at 289-90).  The mechanic testified that he advised Chulo of the needed servicing and was directed by Chulo to make the necessary repairs.  (Tr. at 157, 161-63).

And in Fields, the court rejected the defendant's argument that the vehicle, which he had driven into the side of a duplex when attempting to flee from law enforcement, was not readily mobile and that the exception did not apply.  456 F.3d at 523-24.  The court found that the defendant "misharacterize[d] the automobile exception" noting that the defendant had used the vehicle "as a readily mobile vehicle" during the time preceding the crash.  Id. at 524.  Likewise, Defendants and their co-conspirators had used the 1982 Chevy truck as a readily mobile vehicle to transport the controlled substance from Texas to Atlanta.  See also United States v. Jones, 2012 WL 2568200, at *8 & n.8 (M.D. Ala. June 15, 2012) (finding that the mobility requirement was met "even though the vehicle had struck another vehicle"

24

because there was no evidence that the vehicle was inoperable) (citing, *inter alia*, United States v. Garcia, 433 Fed. Appx. 741, 744-45 (11th Cir. 2011) ("The mobility requirement focuses on whether the vehicle is capable of functioning, not whether it is likely to move in the near future[.]"); United States v. Rommann, 1990 WL 66823, at *2 (6th Cir. May 21, 1990) ("The only remaining question is whether the fact that the truck was temporarily up on a jack with a wheel off dictates a finding that the [warrantless] search was illegal.  We conclude that it does not[.]")); United States v. Robinson, 2011 WL 1188503, at **7-8 (E.D. Tenn. February 4, 2011) (finding that the automobile exception applied although "[a]t the time the truck was searched, its tires were blown out and the truck was inoperable").

For these reasons, the court finds that (1) Defendants lacked a reasonable expectation of privacy in the 1982 Chevy truck on May 29, 2014, and (2), even if they were entitled to challenge the seizure of the truck, the automobile exception applied justifying the warrantless search.  The court recommends denying Defendants' motions to suppress on this ground.

**b.    Warrentless Arrest and Search Incident to Arrest**

Defendants next challenge the seizure of the cellular telephones by law enforcement following their arrests at the auto shop on May 29, 2014.  [Doc. 82; Doc.

25

83 at 6-7; Doc. 89].  Both Defendants assert that the Government has not established that the cellular telephones attributed to them were seized during a search incident to their arrests, and Defendant Alvarez additionally contends that the Government did not have probable cause for his arrest such that the seizure of the cellular telephones constituted fruits of an unlawful arrest.  [Id.].  The Government opposes the motions arguing that there was probable cause to support Defendant Alvarez's arrest and that the Blackberry model Curve cellular telephone attributed to Defendant Cervantes was seized in plain view.  The Government, relying entirely on the argument that Defendant Alvarez cannot challenge the seizure of the Blackberry model Curve and BLU model Studio 5.5S cellular telephones attributed to him, does not otherwise respond to the arguments regarding the seizure of these cellular telephones.  [Doc. 87 at 8-21; Doc. 91].[15]

_____

[15]As stated *supra*, prior to the evidentiary hearing and at the beginning of the evidentiary hearing, the Government failed to place either Defendant on notice that there was any contention that Defendants lacked a legitimate expectation of privacy in the cellular telephones attributed to them. [Doc. 59]; (Tr. at 3-7).  However, during the course of the evidentiary hearing, when difficulties arose with the Government's evidence regarding the seizure of the cellular telephones, the Government raised the issue of whether Defendants had a legitimate expectation of privacy in the telephones. (Tr. at 127-29).  The court questioned the Government doing so at that stage of the proceedings and finds that the Government did not give Defendants timely notice. And, in any event, the evidence at the hearing established each Defendant's entitlement to challenge the seizures of the telephones.  Government witnesses,

### 1.     Probable Cause for Arrest of Defendant Alvarez

Defendant Alvarez contends that the Government's evidence only establishes that he was present with Defendant Cervantes on May 29, 2014, but not that he was a participant in the delivery and receipt of the liquid methamphetamine.  [Doc. 82 at 10-14].    After consideration of the totality of the circumstances resulting in Defendant's arrest, the court finds that law enforcement had probable cause to arrest Defendant.

In <u>Ybarra v. Illinois</u>, 100 S. Ct. 338 (1979), the Supreme Court stated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." <u>Id.</u> at 342 (citing <u>Sibron v. New York</u>, 88 S. Ct. 1889, 1902 (1968)).  The Court further explained, "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.  This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another . . . ." <u>Id.</u>

---

although unable to provide specifics, testified that the cellular telephones were seized from Defendants after their arrests. (Tr. at 25-26, 64, 234, 282).  And each Defendant when questioned identified the cellular telephone(s) belonging to him.  (Tr. at 229, 234-37, 276-77).

27

In <u>Craig v. Singletary</u>, 127 F.3d 1030 (11th Cir. 1997), the Eleventh Circuit

Court of Appeals stated:

> Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense. . . . Because "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," . . . "probable cause itself is a doctrine of reasonable probability and not certainty[.]"

<u>Id.</u> at 1042 (citations omitted); <u>see also</u> <u>United States v. Lindsey</u>, 482 F.3d 1285, 1291

(11th Cir. 2007) ("Probable cause to arrest exists when the totality of the facts and

circumstances support 'a reasonable belief that the suspect had committed or was

committing a crime.'") (citation omitted).  Thus, "[s]ince a finding of probable cause

requires only a probability of criminal activity, . . . a court assessing probable cause

in hindsight must assess both the totality of the circumstances and the inferences that

flow from those circumstances."  <u>United States v. Wai-Keung</u>, 845 F. Supp. 1548,

1557 (S.D. Fla. 1994), <u>aff'd</u>, 115 F.3d 874 (11th Cir. 1997) (citations omitted).

A law enforcement officer need not resolve all inferences and factual conflicts

in favor of the suspect.  "An officer's decision to arrest a suspect may be objectively

reasonable even though that officer has not specifically discarded every possible non-

criminal explanation for the conduct that forms the basis for [the] decision to arrest

AO 72A
(Rev.8/82)

a suspect." <u>Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.</u>, 956 F.2d 1112, 1119 n.5 (11th Cir. 1992).  And, in judging those facts and circumstances, the court should view all of the circumstances "in the light of the officers' special training and experience." <u>United States v. Smith</u>, 201 F.3d 1317, 1323 (11th Cir. 2000); <u>accord</u> <u>United States v. Reed</u>, 402 Fed. Appx. 413, 415 (11th Cir. 2010) ("In making these commonsense judgments, '[t]he . . . officer is expected to assess the facts in light of his professional experience . . . .'") (citation omitted); <u>United States v. Knight</u>, 336 Fed. Appx. 900, 902 (11th Cir. 2009) ("Great deference is given to the judgment of trained law enforcement officers on the scene.") (citations and internal quotation marks omitted).

At the time of Defendant's arrest, the agents and TFOs were aware of the following facts.  Guerrero was delivering to Atlanta a large quantity of liquid methamphetamine concealed in one of the fuel tanks of the 1982 Chevy truck.  (Tr. at 9-12, 204-06).  She had been in contact with Flaco to whom she was to deliver the truck containing the controlled substance and was directed to make the transfer at the Travelodge.  (Tr. at 11-12, 205-09).  After arriving at that location and notifying Carlos (her contact in Mexico) and Flaco, the Equinox arrived at the motel with Defendant Cervantes/Flaco driving and Defendant Alvarez a passenger. (Tr. at 13-14,

29

56, 209, 211, 213).  The Equinox did not park near the truck, and neither Defendant

exited the vehicle.  After a few minutes, the Equinox left the motel traveling to a

restaurant, where it remained for a short time, and then to an apartment complex,

where it remained for a few minutes, before returning to the motel and parking near

Guerrero and the truck.  (Tr. at 14-15, 56-59, 211-12).   The surveillance law

enforcement officers testified that Defendants appeared to be conducting a "heat

check," that is, looking for suspicious vehicles or individuals - law enforcement -

before meeting with Guerrero and making the transfer.  (Tr. at 15, 216).  Both

Defendants then exited the Equinox, now parked next to the 1982 Chevy truck, and

walked around the truck; Defendant Cervantes apparently instructed Guerrero to leave

the truck keys on the floor board.[16]  He subsequently entered the truck and attempted

unsuccessfully to start the vehicle.  (Tr. at 14, 41-42, 58-60, 212-13, 268, 271-72).

---

[16]Guerrero understood that she was to be paid $1,000 when the delivery in
Atlanta took place.  After the arrests of Defendants later on May 29, 2014, when
shown photographs of Defendant Cervantes and Defendant Alvarez, Guerrero
identified Defendant Alvarez as the individual who paid her the $1,000. (Tr. at 14, 24,
45, 70-71, 79-80, 214, 243-44, 270).  The Government includes the payment to
Guerrero as a fact in support of probable cause to arrest Defendant Alvarez.  [Doc. 87
at 21].  However, as the Government knows, or should know, information acquired by
the Government *after* a warrantless arrest cannot be relied upon to establish probable
cause for that prior arrest.

Both Defendants then reentered the Equinox, with Defendant Cervantes driving, and drove across the street to a gas station. (Tr. at 15, 60, 215-16, 272-73). In a short time, the Equinox returned to the motel; a tow truck arrived; and both Defendants pushed the 1982 Chevy truck out of the parking space for loading onto the tow truck. (Tr. at 60, 76, 214, 216-17, 272-73). The tow truck drove to the auto shop, with Defendants in the Equinox following, and at the auto shop, both Defendants exited the Equinox and entered the auto shop.[17] (Tr. at 16-17, 217-18, 274, 285-87). The tow truck then drove to the rear of the auto shop, where the 1982 Chevy truck was taken off the tow truck, jumped off, cranked and driven by the mechanic into one of the service bays and raised on a lift. (Tr. at 18-20, 217-18, 220, 223, 288-89). After observing these events and based on concerns about losing control over the truck and the liquid methamphetamine, agents and TFOs entered the auto shop to secure the truck and the individuals present. (Tr. at 21, 29, 222-23, 389-91). Although not entirely clear as to where Defendant Alvarez was standing when the agents and TFOs entered the front of the shop, he was observed apparently attempting to leave out of

---

[17]Defendant Alvarez, when asked, advised the mechanic that the 1982 Chevy truck would not crank. (Tr. at 156, 159-60, 173, 187-88). However, one of Defendant's witnesses, Alejandro Cardoco, the mechanic, testified to this information, and nothing indicates that the arresting agents were aware of this fact before Defendant Alvarez was placed under arrest.

31

the rear of the shop and apprehended at the rear of the shop.  (Tr. at 97, 294, 300-01, 315-17).

Defendant's contention that he was merely present is not persuasive.  In United States v. Major, 341 Fed. Appx. 549 (11th Cir. 2009), the defendant contended that no probable cause existed for his arrest because he was merely a passenger in the vehicle driven by the individual identified by the confidential informant as the source of the cocaine intended for delivery to the informant.  Id. at 550-51.  The drugs were concealed in a duffle bag, and the defendant asserted that no information tied him to that bag.  Id. at 550.  Rejecting his argument, the court stated that "it is probable that [the defendant] was involved with the drug transaction because he was in [the] vehicle at the precise time and place [his companion] was scheduled to make a significant cocaine sale, an unlikely situation for an unknowing passenger merely along for the ride."  Id. at 551.  Similarly, in United States v. Frazier, 394 F.3d 612 (8th Cir. 2005), the Eighth Circuit Court of Appeals found sufficient evidence to support the conviction of an individual transporting a large quantity of pseudoephedrine although there was no direct evidence of the defendant's knowledge of the contents of the U-Haul truck used to the transport the precursor.  Id. at 620-21.  The court noted that "[e]ven if [the defendant] did not own the U-Haul or the contents being transported,

32

it is unlikely that the owner would place such a significant amount of pseudoephedrine in the hands of people who do not know it is there." Id. at 621.  Likewise in this case, Defendant Alvarez was present throughout the events of May 29, 2014, accompanying the intended recipient of a large amount of liquid methamphetamine to the location of the transfer of the drugs.  He also participated in the "heat check" conducted prior to the delivery of the truck.  And Defendant assisted with relocating the drug container (that is, the 1982 Chevy truck) to the auto shop when the truck would not crank and remaining with the truck at the auto shop.  Given the lack of road worthiness and age of the truck (Tr. at 10), it is doubtful that Defendant's presence is accounted for based on a belief that his associate went through all of the effort expended on May 29, 2014, simply to take possession of a beat-up truck over thirty years old.  It is highly unlikely that the participants in the delivery of the drugs would risk involving an unknowing witness over an extended period of time in their criminal conduct.

And, of significance to the finding of probable cause, when agents and TFOs entered the auto shop, Defendant apparently attempted to flee by leaving out of the back of the shop.  That is not the conduct of an unwitting individual who just happens to be in the wrong place at the wrong time.  See United States v. Pantoja-Soto, 739 F.2d 1520, 1523-24 (11th Cir. 1984) (finding that a defendant's presence at a location

33

where drugs were being sold in conjunction with his flight upon the arrival of law enforcement officers established probable cause to believe the defendant "was in some way involved in the drug transaction"); accord United States v. Mitchell, 407 Fed. Appx. 407, 410 (11th Cir. 2011) ("Evasive behavior is a 'pertinent factor'" in establishing a reasonable suspicion of criminal conduct.); United States v. Gordon, 231 F.3d 750, 757 (11th Cir. 2000) (unprovoked flight may be considered as evidence of wrongdoing and contribute to finding of reasonable suspicion); United States v. Cruz, 2009 WL 1382532, at **1, 3 (N.D. Ill. May 13, 2009) (the defendant, who was present in a separate vehicle at the scene of an intended control delivery, who was observed conversing with the intended recipient of the drugs, and who then attempted to flee when confronted by law enforcement, challenged the lawfulness of his arrest; the court held that "there is no question that probable cause existed to arrest the [defendant]").

For all of these reasons, the court finds that law enforcement had "'a reasonable belief that [Defendant Alvarez] had committed or was committing a crime[,]'" Lindsey, 482 F.3d at 1291, and his arrest was supported by probable cause. The cellular telephones associated with him and seized on May 29, 2014, are not the fruits of an unlawful arrest.

34

## 2.      Search Incident to Arrest

Defendants next challenge the seizures of the cellular telephones attributed to them following their arrests on May 29, 2014, contending that the Government did not establish that the telephones were seized in searches incident to arrest and noting that the telephones may have been seized from the Equinox.  [Doc. 83 at 6-7; Doc. 89]. With respect to the Blackberry model Curve attributed to Defendant Cervantes, the Government responds that, once Defendant used that cellular telephone, at the Government's request, to attempt to contact other participants in the illegal conduct, the plain view doctrine justified the seizure of the telephone.  [Doc. 87 at 18-19]. Frankly, this argument, which in no way addresses how the cellular telephone came to be in the Government's possession in the first place, that is, when and where the telephone was seized before the telephone was handed to Defendant to make the calls, is nonsensical and will not be further addressed.  And, with respect to the Blackberry model Curve and BLU model Studio 5.5S attributed to Defendant Alvarez, as noted, the Government does not address the actual seizure of the cellular telephones.  [Doc. 91].  Nevertheless, based on the totality of the circumstances as established by the record and the reasonable inferences drawn from the evidence, the court finds that the

35

Government has demonstrated by a preponderance of the evidence that the cellular telephones were seized incident to Defendants' arrests.

As is true in any case in which there is a warrantless search and seizure, "'the burden of proof as to the reasonableness of the search rests with the prosecution. The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment.'" United States v. Latimore, 2014 WL 3109183, at *11 (N.D. Ga. July 7, 2014) (quoting United States v. Freire, 710 F.2d 1515, 1519 (11th Cir. 1983)). "The burden to establish the application of the warrant exception is by a preponderance of the evidence." Id. (citing United States v. Matlock, 94 S. Ct. 988, 996 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.")). "A preponderance of the evidence simply means an amount of evidence that is enough to persuade the Court that the existence of a fact is more probable than its non-existence." Id. (citing Metropolitan Stevedore Co. v. Rambo, 117 S. Ct. 1953, 1963 n.9 (1997)).

A search of a defendant's person or the area within his immediate vicinity following his arrest and the seizure of any items from his person or within the area

36

surrounding him as the result of a search incident to lawful arrest is one exception to the warrant requirement.  See United States v. Robinson, 94 S. Ct. 467 (1973); Chimel v. California, 89 S. Ct. 2034, 2040 (1969).  In United States v. Goddard, 312 F.3d 1360 (11th Cir. 2002), the Eleventh Circuit Court of Appeals summarized the reasons for and legal authority supporting a warrantless search of an arrestee incident to that arrest.  The court stated:

> "The justification or reason for the authority to search incident to lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." . . .  Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to arrest requires no additional justification. . . .  In fact, a full search incident to a lawful arrest is *not only* a "reasonable" search under the Fourth Amendment, it is *also* an exception to the warrant requirement. . . .

Id. at 1364 (citations omitted) (emphasis in original).  Additionally, to be lawful, a search incident to arrest need not occur simultaneously with the arrest of a defendant but may be conducted at a later time and even place, so long as the search and seizure is otherwise reasonable.  See, e.g., United States v. Edwards, 94 S. Ct. 1234, 1237 (1974) ("searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention"); United States v. Sonntag, 684 F.2d 781, 786 (11th Cir. 1982); United States v. Baldwin, 644

37

F.2d 381, 384 (5th Cir. 1981) (search of defendant's person at FBI office two hours after arrest constitutes search incident to arrest); United States v. Hansen, 652 F.2d 1374, 1389 (6th Cir. 1981) (search of defendant's person at scene four hours after arrest valid search incident to arrest).

Although containing gaps and providing scant direct evidence regarding the exact time and location that the cellular telephones were seized, the court finds that the record before the court demonstrates that it is more probable than not that these telephones were seized from Defendants' persons or from areas within their vicinity following arrest. First, contrary to Defendants' argument, the record refutes the claim that the telephones might have been seized from the Equinox. Agent Yates, the case agent, testified when being cross-examined about the seizure of the cellular telephones, "I know of nothing that came out of the Equinox." (Tr. at 64-65). That statement was not challenged by other testimony. Second, every agent or TFO questioned about the seizure of the cellular telephones responded that he believed that the telephones were seized from Defendants' persons. (Tr. at 25-26, 64, 236-37, 276).

As to Defendant Cervantes' cellular telephone, the evidence is stronger regarding the timing and seizure. Defendant was initially seized as he attempted to flee from the auto shop and was then taken back into the auto shop. (Tr. at 224-28).

38

Approximately an hour later, TFO Bailey conducted an interview of Defendant.  (Tr. at 229).  During the interview, TFO Bailey asked Defendant Cervantes, who had waived his <u>Miranda</u> rights, if he had a cellular telephone.  Defendant, who remained handcuffed, nodded towards the area where he had been seated after being detained. (Tr. at 234, 282).  Defendant walked in that direction with TFO Arroyo out of TFO Bailey's sight and returned with a cellular telephone.  (Tr. at 234-35, 282).  Defendant advised that the cellular telephone was his and, when asked, attempted to make a telephone call to a number in Mexico and to Guerrero.  (Tr. at 117, 235, 282).  The conclusion that Defendant Cervantes remained in possession of his cellular telephone while being detained in the auto shop is supported by the testimony that, although all of the individuals detained at the auto shop were initially patted down for weapons, if an item detected on the person was not believed to be a firearm, the item was not seized at that time.  (Tr. at 302).  This testimony also supports the conclusion that Defendant Alvarez remained in possession of his cellular telephones after arrest which were then seized from his person by the time the agents and TFOs attempted to interview him in the auto shop.  (Tr. at 236-37).  And this conclusion is corroborated by the sworn statement in the affidavit for the search warrant for the Blackberry model Curve belonging to Defendant that, following the arrest, "[u]pon searching

39

ALVAREZ, agents found a black/silver Blackberry Curve 9310 and white and black BLU model Studio 5.5S." [Doc. 57, Attachment 2 (Blackberry Curve 2 warrant and application); Doc. 68-1 (Blackberry Curve application)].

Finally, reasonable inferences drawn from the events on May 29, 2014, lend further support to the court's conclusion that Defendants were in possession of their cellular telephone(s) at the time of their arrests. Defendants had been observed using the telephones earlier while conducting the "heat check," and Defendant Cervantes was utilizing his cellular telephone to communicate with Guerrero and with Carlos to arrange the delivery of the 1982 Chevy truck. (Tr. at 11-12, 14-15, 42, 51, 58, 205-06, 208-10). Also, either Defendant Cervantes or Defendant Alvarez contacted Chulo, who made arrangements for the truck's delivery and servicing at the auto shop after the truck did not crank at the Travelodge. (Tr. at 155-56, 158, 173). The court seriously doubts that Defendants left their cellular telephones in the Equinox when they arrived at the auto shop and, accordingly, foreclosed communication with others involved in the delivery of the liquid methamphetamine.

For these reasons, although lacking direct evidence regarding the seizures, the court finds that the record establishes by a preponderance of the evidence that the

cellular telephones were seized from Defendants incident to their arrests.[18]  The court recommends that Defendants' motions to suppress evidence seized from the 1982 Chevy truck and incident to their arrests on May 29, 2014, that is, the cellular telephones, be denied.

## III.  Conclusion

For the foregoing reasons and cited authority, the court **GRANTS** Defendant Alvarez's motion [Doc. 89] to adopt and **RECOMMENDS** that Defendant Cervantes' motions [Docs. 36 and 37] to suppress statements and evidence and Defendant Alvarez's motions [Docs. 35, 55, 60] to suppress statements and evidence be **DENIED**.

---

[18]In United States v. Chaidez-Reyes, 996 F. Supp. 2d 1321 (N.D. Ga. 2014), the court cautioned the Government regarding evidentiary gaps in the record concerning the seizure of various cellular telephones incident to arrest.  In that case, although "[t]he record [was] silent" as to which telephone was seized on which date and from which defendant, the court based on the surrounding circumstances found that a specific cellular telephone was seized from Chaidez.  However, in doing so, the court stated, "The government is reminded that it bears the burden of proof on the propriety of warrantless searches, and it should not cavalierly leave gaps in the evidentiary record."  Id. at 1341 n.20.  The undersigned echos that cautionary remainder.

**Motion to Suppress Re: Search Warrant for Cellular Telephone**

Defendant Alvarez seeks to suppress the evidence obtained from the execution of a federal search warrant for the contents of a black/silver BlackBerry model Curve 9310 cellular phone, chain of custody number 4049039, seized at the time of his arrest on May 29, 2014.[19]  [Doc. 57, Exhibit 2].  Defendant contends that agents lacked probable cause to arrest him and, accordingly, to seize the cellular telephone.  [Doc. 68 at 7-9].  As already discussed, there was probable cause to arrest Defendant for his involvement in the conspiracy to possess with intent to distribute methamphetamine, and the seizure of the cellular telephone incident to his arrest was lawful.  Defendant also contends that due to an unlawful, warrantless search of the cellular telephone before the search warrant was obtained, all of the evidence obtained during execution of the warrant should be suppressed as fruits of the initial illegal search.  [Id. at 9-11].  Defendant next contends that the evidence obtained from execution of the warrant should be suppressed because the affidavit contained materially false information and

------

[19]A second cellular phone was seized at the time of Defendant's arrest, a BLU Studio 5.5S, and a warrant was obtained to search the contents of that cellular phone. [Doc. 57, Exhibit 3].  However, as noted *supra*, the Government does not intend to introduce any evidence flowing from the seizure of that cellular phone.  [Doc. 59 at 4]; (Tr. at 5).  For this reason, Defendant's motion to suppress is moot as to that cellular phone and will not be further discussed herein.

AO 72A
(Rev.8/82)

that an evidentiary hearing should be held on this issue. [Id. at 11-14]. Finally, Defendant contends that the scope of the search of the cellular phone exceeded the search authorized by the warrant. [Id. at 15-18].

The Government opposes the motion to suppress asserting that the initial examination of the cellular phone to obtain identifying information did not constitute a search and, in any event, that information was not used to establish probable cause [Doc. 68 at 4-7]; that Defendant failed to make a substantial, preliminary showing that the affidavit's affiant intentionally or recklessly made false statements in the affidavit [Id. at 7-11]; and that Defendant's vague and conclusory allegation that the execution of the warrant exceeded the authorized scope is insufficient [Id. at 11-12]. The court having read and considered the arguments of the Government and Defendant, and the relevant case law, recommends denying Defendant's motion to suppress.

## I.    Background Facts

On May 29, 2014, agents arrested Defendant Alvarez and his co-Defendant Cervantes as the result of a controlled delivery of the 1982 Chevy truck containing a quantity of liquid methamphetamine, as further detailed *supra*. On June 24, 2014, Defendants, along with co-Defendant Pamela Guerrero, were indicted for violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute methamphetamine, and

43

Defendants Alvarez and Cervantes were indicted for violation of 21 U.S.C. § 841, intentionally possessing with intent to distribute a quantity of methamphetamine. [Doc. 17].  Thereafter, on July 29, 2014, the Government sought and obtained a federal search warrant for a black/silver BlackBerry model Curve 9310 cellular phone ("cellular telephone"), chain of custody number 4049039, which had been seized from Defendant Alvarez at the time of his arrest on May 29, 2014.  [Doc. 68-1 ("Search Warrant" & "Affidavit"); and see Affidavit ¶ 23].

The Magistrate Judge authorized the agents to search the cellular telephone for all records ("in whatever form and by whatever means they may have been created and stored") relating to violations of 21 U.S.C. §§ 841 and 846 and involving Defendants, including:

> 1. . . .
> a.    lists of customers and related identifying information;
> b.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
> c.    any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
> d.    any information recording schedule or travel;
> e.    all bank records, checks, credit card bills, account information, and other financial records[;]
> f.    any and all communications with co-conspirators, including but not limited to voice calls, text messages, and pin-to-pin messages[.]

44

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved user names and passwords, documents, and browsing history . . . .

[Search Warrant, Attachment B].

In support for the search warrant, an affidavit was submitted by Dustin J. Small, a Special Agent with the Department of Homeland Security ("Affiant"). [Affidavit]. The affidavit first set forth Affiant's background and experience. Since April 2010, Affiant worked for the Department of Homeland Security ("DHS"), and previously he had been an officer with the DeKalb County Police Department since 1998. [Id. ¶ 4]. During this time, Affiant participated in investigations involving controlled substances, including methamphetamine, which included examining travel records, financial records, telephone toll records and conducting surveillance and undercover operations and executing federal drug search warrants. [Id. ¶ 5]. Additionally, Affiant's training included "the exploitation of telephones and other communication devices as investigative techniques." [Id. ¶ 6]. Based on his training and experience, Affiant stated he is familiar with the ways by which drug traffickers conduct their business, including "use of cellular telephones . . . to facilitate drug activity . . . ." [Id.]. Based on his experience, Affiant stated that he is aware "that narcotics

45

traffickers routinely use cellular telephones (cell phones) to conduct and further their illegal activities[ and] . . . to communicate with other drug traffickers, co-conspirators, confederates and the like for the purpose of facilitating their narcotics business[ and that they] are known to keep these telephones with them while conducting their illegal affairs." [Id. ¶¶ 8-9]. Affiant further stated that drug traffickers use multiple communication devices to hinder detection by law enforcement and use text messaging for the same purpose. [Id. ¶ 10]. Affiant also stated that he was aware that cellular phones commonly store valuable data, including names, addresses, phone numbers, photos and other information. [Id. ¶ 11].

Affiant then set forth the information resulting in the arrest of Defendants Alvarez and Cervantes, beginning with the stop and consent search of the 1982 Chevy truck by Richland, Mississippi, police officers which resulted in the discovery of a large amount of liquid methamphetamine in one of the fuel tanks. [Id. at 16]. The driver, co-Defendant Guerrero, who was hired by "Carlos" in Abilene, Texas, agreed to make a controlled delivery to Atlanta. Guerrero was to be paid $1,000 upon making the delivery in Atlanta and $3,500 upon return to Mexico. Guerrero had been and was in contact with an unknown male, "Flaco," who was the intended recipient of the methamphetamine. [Id. ¶¶ 17-18]. She was instructed by "Flaco" to travel to a

46

Travelodge Hotel in Atlanta. [Id. ¶ 17]. The vehicle was under continued surveillance by agents. After Guerrero informed "Flaco" that she had arrived at the hotel, "Flaco" communicated with her by telephone indicating that he was approximately fifteen minutes away. A number of the calls were consensually monitored by agents. Shortly thereafter, a silver 2005 Chevrolet Equinox arrived with two individuals inside, Defendant Cervantes driving and Defendant Alvarez a passenger. The Equinox parked next to the 1982 Chevy truck. Guerrero was on the phone with "Flaco" as the Equinox arrived, and she advised surveillance agents that she believed "Flaco" had arrived. [Id. ¶ 19].

Affiant further stated that Alvarez paid the driver the promised $1,000. A tow truck then arrived, loaded the 1982 Chevy truck and drove off with Defendants Cervantes and Alvarez following in the Equinox to an auto shop where the truck was placed on a lift within one of the service bays. [Id. ¶¶ 20-21]. Law enforcement officers then detained Defendants and from Defendants seized three cellular phones, one being the BlackBerry Curve that is the subject of the search warrant. Affiant explained that the battery was removed from the BlackBerry cellular telephones in order to retrieve identifying information for the purpose of securing a warrant. [Id. ¶ 23 & n.1]. Affiant stated, "These were the phones used to communicate with the

47

driver and likely used to communicate with others in Mexico regarding the terms of the deal." [Id. ¶ 23].  Affiant also stated that Defendants were indicted on June 24, 2014, and that the cellular telephone had been secured since its seizure. [Id. ¶¶ 24-26]. The remaining part of the Affidavit sets forth an explanation of technical terms and describes the manner in which the search of the cellular telephone will be conducted. [Id. ¶¶ 27-32].

## II.    Discussion

### a.    Warrantless Search

Defendant Alvarez first contends that the warrantless search of the cellular telephone, that is, the removal of the battery to retrieve identifying information, taints the subsequent search pursuant to the federal search warrant requiring suppression of all of the evidence seized pursuant to the warrant. [Doc. 63 at 9-11].  In support this argument, Defendant relies on the Supreme Court decision in Riley v. California, 134 S. Ct. 2473 (2014).  [Id. at 11].  The Government counters that the removal of the battery did not constitute a search and that, even if a search occurred, no information obtained from that search was utilized to establish probable cause for the search warrant.  [Doc. 68 at 4-7].

48

In <u>Riley</u>, the Supreme Court held "that a warrant is generally required before a . . . search [of a cell phone], even when a cell phone is seized incident to arrest."  134 S. Ct. at 2493.  The Court declined to extend the holding of <u>Robinson</u>, 94 S. Ct. 467,[20] "to searches of *data* on cell phones . . . ."  <u>Riley</u>, 134 S. Ct. at 2485 (emphasis added). In reaching this conclusion, the Court's opinion focuses on the extensive amount of personal data maintained on cellular phones.  The Court stated, "Cell phones differ in both a quantitative and qualitative sense from other objects that might be kept on an arrestee's person. . . .  One of the most notable distinguishing features of modern cell phones is their immense storage capacity."  <u>Id.</u> at 2489; <u>and see</u> <u>United States v. Dixon</u>, 984 F. Supp. 2d 1347, 1352-53 (N.D. Ga. 2013) (finding that privacy interests in today's cellular phones, which "are in effect mini-computers" and contain "a wealth of private information[,]" require a search warrant to search for that information).

However, the agents did not search the *data* on Defendant's cellular telephone before obtaining the search warrant.  The agent simply opened the cellular telephone

---

[20]In <u>Robinson</u>, the Supreme Court applied the search incident arrest doctrine to the arrestee's person and items found on his person even absent concerns about loss of evidence or a specific threat to arresting officers.  <u>See</u> <u>Riley</u>, 134 S. Ct. at 2483-84

49

and removed the battery to retrieve identifying information. [Affidavit ¶ 23 & n.1].[21]
The court finds that this minimally intrusive search incident to arrest was reasonable
and does not fall within the scope of the Supreme Court's decision in Riley. See
United States v. Lowe, 2014 WL 5106053, at *3 (D. Nev. October 10, 2014) (adopting
the magistrate judge's finding that "it was reasonable for the government to remove
the back cover of Lowe's cell phone without a warrant because a cell phone's serial
number is not the type of sensitive personal information requiring a search warrant
under [Riley], instead it is part of the physical aspects of a phone that officers are still
permitted to inspect without fear of triggering greater privacy interests") (quoting
Riley, 134 S. Ct. at 2485, 2490) (internal quotation marks omitted); and see United
States v. Flores-Lopez, 670 F.3d 803, 810 (7th Cir. 2012) (pre-dating the decision in
Riley, and although acknowledging that data search of cellular phone incident to arrest
may not be reasonable, the court stated that conducting a minimally intrusive search
by "[l]ooking in a cell phone for just the cell phone's number does not exceed what
decisions like Robinson and Concepcion[22] allow"); Dixon, 984 F. Supp. 2d at 1352
(finding that the agent's actions exceeded "merely seizing the phone, examining it to

_____

[21]And see evidentiary hearing transcript at 25-28, 65-69.

[22]United States v. Concepcion, 942 F.2d 1170 (7th Cir. 1991).

50

ascertain that it was not a weapon, and preserving it[, he] extracted all the data he could extract using a data extraction device[; t]his intrusion was more than minimal").

Additionally, as pointed out by the Government, no information obtained from this brief and cursory examination of Defendant's cellular telephone was included in the affidavit for the search warrant.  The information upon which  Affiant relied in obtaining the search warrant for the cellular telephone was obtained from the investigation and controlled delivery of the methamphetamine which led to Defendant's arrest and occurred prior to the warrantless examination of the cellular telephone.  [Affidavit].  Besides advising the issuing magistrate judge that the cursory examination of the cellular telephone had taken place, no information from that examination was included in the affidavit and probable cause was not dependent on that information.  And the agents intended to obtain a search warrant even before examining the cellular telephone as is evident from the statement in the affidavit's footnote.[23]  Accordingly, the search warrant was issued based on information from an independent-source.  See Murray v. United States, 108 S. Ct. 2529, 2536 (1988) ("The ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely

---

[23]The battery was removed from the BlackBerry cellular telephones in order to retrieve identifying information for the purpose of securing a warrant.  [Id. ¶ 23 & n.1].

independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant."); Segura v. United States, 104 S. Ct. 3380, 3390 (1984) (finding evidence admissible because search warrant was issued solely on basis of information known before previous illegal entry and because pertinent evidence that had been obtained with warrant had not been seen by officers during prior entry); United States v. Davis, 313 F.3d 1300, 1304 (11th Cir. 2002) (finding evidence admissible because third search warrant was an independent source that removed taint of entry where exigent circumstances were alleged but uncertain). "[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." Segura, 104 S. Ct. at 3391; and see United States v. Kenniston, 2014 WL 6611107, at *15 (D. Nev. November 20, 2014) (finding that the "application for the search warrant does not rely upon any information learned from the contents of [the defendant's] phones to support probable cause for the search warrant[,]" the motion to suppress was denied).

52

For these reasons, the court finds that the initial warrantless examination of Defendant's cellular telephone does not provide a basis for suppression of the evidence obtained from the search executed pursuant to the warrant.

**b.    <u>Franks</u>**

Defendant next contends that false information was intentionally or recklessly included in the affidavit for the search warrant.  He specifically cites this paragraph in support of his argument:

> Agents arrested both CERVANTES and ALVAREZ.  Upon searching CERVANTES, agents found a black/silver Blackberry Curve 9310. Upon searching ALVAREZ, agents found a black/silver Blackberry Curve 9310 and a white and black BLU model Studio 5.5S.[ ]  These were the phones used to communicate with the driver and likely used to communicate with others in Mexico regarding the terms of the deal.

[Affidavit ¶ 23].  Defendant asserts that inclusion of the final sentence in this paragraph "falsely suggested that Mr. Pineda Alvarez was a co-conspirator of Mr. [sic] Guerrero's" implying a "greater chance of incriminating evidence on" Defendant's cellular telephone.  [Doc. 63 at 12].  Defendant also contends that the evidence before the court indicates that Defendant's cellular telephone was not used to communicate with the driver because the evidence establishes that the driver was speaking to "Flaco" who had been identified as Defendant Cervantes before the search warrant

53

was obtained.  [Id. at 12-13].  And, although no evidence is offered in support of the motion to suppress, Defendant contends that at a hearing he could produce evidence that his cellular telephone was not in fact used to communicate with the driver or with individuals in Mexico.  [Id. at 14].  And, finally, Defendant contends that if the false statement is omitted from the affidavit, there is no probable cause to issue the warrant. [Id.].  The Government opposes Defendant's request for a Franks hearing contending that Defendant's interpretation of the affidavit is faulty and that he has failed to make a substantial preliminary showing that Affiant intentionally or recklessly included false information in the affidavit.  [Doc. 68 at 7-11].

In Franks v. Delaware, 98 S. Ct. 2674 (1978), the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search.  Franks, 98 S. Ct. at 2684-85; see also United States v. Sarras, 575 F.3d 1191, 1218 (11th Cir. 2009).

AO 72A
(Rev.8/82)

To mandate a <u>Franks</u> evidentiary hearing,

the [defendant's] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

<u>Franks</u>, 98 S. Ct. at 2684-85; <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1267 (11th Cir. 2001) ("[T]o prevail in a <u>Franks</u> challenge one must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in 'reckless disregard for the truth,' and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant.") (citation omitted).

55

Defendant's <u>Franks</u> argument focuses on the inclusion of the statement: "These[, i.e., the cellular telephones seized from Defendants,] were the phones used to communicate with the driver [of the 1982 Chevy truck containing the liquid methamphetamine] and likely used to communicate with others in Mexico regarding the terms of the deal." [Affidavit ¶ 23]. Defendant's reliance on the fact that the driver only communicated with "Flaco" - Defendant Cervantes - as establishing the falsity of Affiant's statement about the potential use of one of his cellular telephones to communicate during the transaction is misplaced and does not support finding Affiant's statement was either intentionally or recklessly false. Defendant Alvarez was with Defendant Cervantes during the relevant time period, and the fact that Defendant Cervantes conducted the phone calls with Guerrero does not foreclose the use of Defendant Alvarez's cellular telephones for one or more of those communications.[24] Affiant did not mislead the issuing magistrate judge about the individual, "Flaco," with whom Guerrero stated she communicated. Affiant never

---

[24]Defendant's unsupported offer of proof that, if an evidentiary hearing was conducted, he could present an affidavit that his cellular telephones were in fact not used to communicate with Guerrero does not establish that Affiant's statement was intentionally or recklessly false absent proof, which Defendant does not claim to process, that Affiant affirmatively knew that fact at the time he prepared the affidavit. [Doc. 63 at 14].

56

indicated that Guerrero communicated with both of the occupants of the Equinox. [Affidavit ¶¶ 18-20]. And Affiant did not mislead the issuing magistrate judge about the fact that Defendant Alvarez was in possession of two of the cellular phones and that Defendant Cervantes possessed another cell phone when arrested. [Id. ¶ 23]. All of the information was before the issuing magistrate judge to consider and evaluate in making the probable cause determination.

The court also finds that at least one of the cellular telephones seized had to be used during the controlled delivery. At most Affiant should have said that one of the parties involved in the transaction used a cellular telephone to communicate with Guerrero and not more broadly stated that "these phones" were so used. The court does not find that, if this alterative language should have been used in the affidavit, this fact either (1) evidences deliberate or intentional or even reckless inclusion of a false statement or (2) would have negated probable cause. See O'Ferrell, 253 F.3d at 1267. The fact that one of the participants made use of such devices, just as Affiant opined that his training and experience would lead him to believe [Affidavit ¶¶ 3-6, 8-11], substantiated the "probability" that all of the cellular telephones seized would contain evidence.

Contrary to Defendant's contention, the statement about the use of the cellular telephones to communicate with Guerrero and possibly with others in Mexico is not the only link between Defendant and the drug conspiracy.  [Doc. 63 at 12].  At the time of issuance of the search warrant, Defendant had been indicted for conspiring to possess with intent to distribute and for possession with intent to distribute the liquid methamphetamine found in the 1982 Chevy truck.  [Doc. 17].  This fact was included in the search warrant affidavit.  [Affidavit ¶ 24].  No improper inference had to be drawn from the allegedly misleading statement in the affidavit to conclude that Defendant Alvarez was Defendant Cervantes' and Defendant Guerrero's co-conspirator.  And Defendant paid Guerrero the promised $1,000 for making the delivery of the drugs indicating his active involvement in the conspiracy.  [Affidavit ¶ 20].

The issuing magistrate judge properly relied on Affiant's opinion about the use of these devices and the information potentially contained therein to find a nexus between the drug transaction and evidence of that crime and Defendant's cellular telephone.[25]  See United States v. Robinson, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995)

---

[25]Based on his training and experience [Affidavit ¶¶ 3-6], Affiant stated that he is familiar with the ways by which drug traffickers conduct their business, including "use of cellular telephones . . . to facilitate drug activity . . . ." [Id. ¶ 6].  Based on his

58

(opinions and conclusions of experienced agents regarding facts are properly considered in determining probable cause); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995) (same); United States v. Espinosa-Orlando, 704 F.2d 507, 511 (11th Cir. 1983) (same).  In United States v. Wiseman, 158 F. Supp. 2d 1242 (D. Kan. 2001), the district court rejected an attack on probable cause to search the contents of a cellular telephone of a defendant who had been arrested for the manufacture of methamphetamine.  Id. at 1249.  The affidavit in that case set out the affiant's training and experience and included his opinion that "drug dealers commonly store information relating to their associates in their cellular phones."  Id.  The court stated, "Defendant asks the court to feign ignorance of what has become common knowledge in the courts, i.e., that cellular phones, complete with memory of numbers recently or frequently called, or their 'address books,' are a known tool of the drug trade."  Id.

---

experience, Affiant stated that he is aware "that narcotics traffickers routinely use cellular telephones (cell phones) to conduct and further their illegal activities[ and] . . . to communicate with other drug traffickers, co-conspirators, confederates and the like for the purpose of facilitating their narcotics business[ and that they] are known to keep these telephones with them while conducting their illegal affairs." [Id. ¶¶ 8-9]. Affiant further stated that drug traffickers use multiple communication devices to hinder detection by law enforcement and use text messaging for the same purpose. [Id. ¶ 10].  Affiant also stated that he was aware that cellular phones commonly store valuable data, including names, addresses, phone numbers, photos and other information.  [Id. ¶ 11].

AO 72A
(Rev.8/82)

(citing <u>Nixon</u>, 918 F.2d at 900; <u>United States v. Hernandez</u>, 1999 WL 183886 (D. Kan. March 9, 1999); <u>United States v. Hernandez</u>, 1999 WL 318090, at *13 (D. Kan. February 23, 1999)); <u>and see</u> <u>Riley</u>, 134 S. Ct. at 2493 ("Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals."); <u>United States v. Correa</u>, 347 Fed. Appx. 541, 545 (11th Cir. 2009) (finding that in executing search warrant the agents "reasonably concluded that [the defendant's] cellular telephone, a 'known tool of the drug trade,' contained digital evidence about the conspiracy") (citation omitted).  Accordingly, even if the statement that "[t]hese were the phones used to communicate with the driver" is not considered by the court, the affidavit still establishes probable cause for the search of Defendant's cellular telephone.

For these reasons, the court finds that Defendant has not made a substantial preliminary showing as required for this court to conduct a <u>Franks</u> hearing and that Defendant's motion to suppress should be denied on this ground.

**c.   Scope of Search**

Defendant finally contends that the scope of the search of his cellular telephone exceeded the search authorized by the issuing magistrate judge.  [Doc. 63 at 15-18].

Although Defendant was allowed an opportunity to perfect his motion to suppress, he did not provide an inventory of the items seized, and the only items identified in his brief as being seized appear to fall within the scope of the authorized search.  [Id.]. The Government opposes the motion because Defendant failed to present sufficient facts to establish that any item seized pursuant to the warrant exceeded the scope authorized.  [Doc. 68 at 11-12].

The Eleventh Circuit Court of Appeals has stated that:

If a search exceeds the scope of terms of a warrant, any subsequent seizure is unconstitutional.  However, a search may be extensive as reasonably necessary as required to locate the items described in the warrant, and is generally "not limited by the possibility that separate acts of entry or opening may be required to complete the search."

United States v. Jackson, 120 F.3d 1226, 1228 (11th Cir. 1997) (quoting United States v. Martinez, 949 F.2d 1117, 1120 (11th Cir. 1992)).  "The crucial inquiry is always 'whether the search and seizures were reasonable under all the circumstances.'" United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991) (quoting United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982)).  This includes consideration of whether the agents executing the warrant reasonably interpreted the list of property to be seized to include items that may not be specifically listed in the warrant.  See United States v. Hill, 19 F.3d 984, 987 (5th Cir. 1994) ("In identifying the property to

be seized, the agents are 'required to interpret the warrant,' but are 'not obliged to interpret it narrowly.'") (citation omitted).

Seizure of items beyond the scope of the warrant does not automatically invalidate the search.  In United States v. Khanani, 502 F.3d 1282 (11th Cir. 2007), the Eleventh Circuit Court of Appeals summarized the Court's prior holdings:

> Total suppression of all items seized, including items within a warrant's scope, is not appropriate unless the executing officers' conduct "exceeded any reasonable interpretation of the warrant's provisions." . . . "[A]bsent a 'flagrant disregard' of the terms of a warrant, the seizure of items outside the scope of the warrant will not affect admissibility of items properly seized," . . . or "constitute reversible error on direct appeal from the conviction."

Id. at 1289 (quoting Wuagneux, 683 F.2d at 1354; United States v. Lambert, 887 F.2d 1568, 1572 (11th Cir. 1989)); see also Schandl, 947 F.2d at 465.

As Defendant notes, the warrant authorized the search for the following items:

> 1. . . .
>    a.   lists of customers and related identifying information;
>    b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
>    c.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
>    d.   any information recording schedule or travel;
>    e.   all bank records, checks, credit card bills, account information, and other financial records[;]

62

      f.     any and all communications with co-conspirators, including but not limited to voice calls, text messages, and pin-to-pin messages[.]

      2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved user names and passwords, documents, and browsing history . . . .

[Search Warrant, Attachment B].   And Defendant states that the search of his BlackBerry Curve cellular telephone resulted in the seizure of "call logs, contact lists, records of messages and some image files."   [Doc. 63 at 18].   The court notes that all of these items were specifically identified on the list of items to be seized.   Defendant fails to explain why these items fall outside of the scope of the warrant.   Defendant appears to speculate that "the Government copied and saved all of the contents of" his cellular telephones [Id.] to argue that a flagrant disregard of the terms of the warrant occurred, but he fails to present any evidence to support his speculation.

As the Government correctly points out, Defendant's failure to "specifically point[ ] out which items he contends were seized in violation of the warrant" and to "specifically detail[ ] how the warrant's scope was exceeded in execution" results in a finding that he is not entitled to "the relief of suppression."  United States v. Lisbon, 835 F. Supp. 2d 1329, 1347 (N.D. Ga. 2011); and see United States v. Phothisat, 2014

63

WL 4979196, at *4 (S.D. Ala. October 6, 2014) ("To the extent Defendant claims the search exceeded the scope of the warrant, his motions lacks sufficient detail" because "[h]e has failed to identify any specific item seized that was beyond the scope of the warrant."); United States v. Arzate, 2014 WL 1256075, at *9 n.2 (N.D. Ga. March 26, 2014) ("A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that a substantial claim is presented. . . .  The Court need not act upon general or conclusory assertions.") (citing Cooper, 203 F.3d at 1284).  Defendant has not carried his burden to establish a flagrant disregard of the warrant's terms such to require suppression of any much less of all of the evidence seized during the search.

For these reasons, the court finds that Defendant's motion to suppress should be denied on this ground.

## III.    Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 57] to suppress evidence obtained from the search of his BlackBerry Curve cellular telephone be **DENIED**.

64

## Conclusion

The court **GRANTS** Defendant Alvarez's motion [Doc. 89] to adopt arguments made by Defendant Cervantes in support of the motions to suppress.

And the court **RECOMMENDS** that Defendant Cervantes' motions [Docs. 36 and 37] to suppress and Defendant Alvarez's motions [Docs. 35, 55, 57 and 60] be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED AND RECOMMENDED** this 17th day of April, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

65